Let's call the next case. 3-10-0194, LRN Holding, Inc., and David P. Ransford, accounts by Robert Riffle versus Windley Petal Advisors, equity by David P. Riffle. Mr. Riffle, you may proceed. Thank you, Your Honor. Good afternoon, Your Honors. May it please the court, counsel, Robert Riffle, on behalf of LRN Holding, Inc., and David P. Ransford, we're here today seeking a reversal and remand of this case. I think the facts are fairly straightforward, and I'll be very brief in my presentation, just for brief background purposes. My client, LRN, was in the process of selling certain of its assets and divisions. It entered into an agreement with Windley for the brokerage of that business. Come to find out, Windley was not licensed, as it needed to be pursuant to Section 10 of the Illinois Business Brokers Act. Section 60 of the Illinois Business Brokers Act is very explicit with respect to ramifications of that failure to be properly registered. The ramifications of that are twofold. One, that the contract is void. That word is expressly used right in Section 60 of the act. And second, that the counterparty to a contract with somebody who's not licensed is entitled to recover all payments made pursuant to that void contract. And the term fees, right? That's correct, Your Honor. We proceeded to file a complaint in the circuit court in Peoria County based on this lack of licensure seeking a declaration. Is it licensure or just registration? Well, it's termed registration. The process itself involves the filing of paperwork that lists different credentials and such. It's not a license such as a law license or a physician's license, but it is an actual registration to be entitled to proceed in that business of brokering businesses in Illinois. We proceeded to file our complaint. The defendants moved to dismiss on grounds that there was a binding arbitration agreement. We affirmatively stated in our response to their pleading, citing section 2A of the Illinois Arbitration Act, that we denied the existence of a binding arbitration agreement. And we sought affirmative relief in the form of a determination. I'm reading here from section 2A of the act. But if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised  Otherwise, the application shall be denied. So we affirmatively availed ourselves of that relief in our response to their motion to dismiss, thereby putting ourselves, we believe, within the purview of the Illinois Arbitration Act. What about the Federal Arbitration Act? We believe that the Federal Arbitration Act does not apply to this case and consistently have argued the Illinois case law, which I'll get to in a moment, the Asty and Kaplan case, and have relied on the statutory provisions of the Illinois Act. I think it's clear, because of the Illinois-Joseph Law Provision in the agreement, that Illinois law does apply in their substantial case law. I think supports that the Glazer case in particular. Well, isn't, I mean, LRN is the principal place of business in Illinois. That's correct. Delaware Corporation. That's correct. And no question that LRN also, they sell those yellow sprinklers every place, right? I believe that's true. And the, and where was the company, Dallas-Montana, who bought it? The company, well, the divisions were sold to, I believe, two or possibly three different companies. One was Bosch, I think a division of Bosch, a German company, but I believe that the actual group that bought them was in suburban Chicago, Illinois. And another company, Signature, bought the Turf Division, and that's a company in Illinois. So wouldn't a sale of LRN be a transaction involving commerce? I think that's true, Your Honor, but citing the Tortiello case that we cited, page two of our reply brief, and also in our original brief as well, and I'm quoting here, however, in circumstances where parties to a contract have agreed to arbitrate in accordance with state law, the FAA does not apply, even where interstate commerce is involved. And the court in Tortiello then cites the Glazer case and Volt and a couple of other cases for that proposition that where parties expressly choose as a choice of law, Illinois law, that that applies regardless of whether or not it's interstate commerce and regardless of what otherwise would be the applicable federal arbitration act. Do you think that's consistent with federal law in these choice of law provisions and arbitration laws taken out of the Federal Arbitration Act? I think that is what the Glazer case and the Tortiello case specifically upheld, is if parties decide to include an Illinois choice of law provision or any state law provision and agree to be bound by that, I think that is the ramification of that, that the parties can choose to be bound by a state statute notwithstanding whether there would be a federal commerce involved that you could actually choose to be bound by the internal laws of the state of Illinois. And that's exactly what has happened here. I think those cases, the Glazer case, Volt, and Tortiello are really on all fours with that, that all those cases had essentially general choice of law provision, saying the parties agreed to applicability of Illinois law to this contract. Wasn't, I don't believe in either of those three cases was that choice of law specifically within the arbitration clause, but rather was a standalone provision in the agreement just as we have it here. And so I think Illinois law, because of the choice, the express choice of that law by the parties here would indeed put us within the ambit of the Illinois law. We would respectfully submit that all Illinois case law supports our position that an unlicensed or unregistered person under one of these statutes cannot force arbitration. We have the Askey case, we've got the Kaplan case, we've got consistent Illinois law that so holds, and then the Tortiello case that is post-Buckeye that also states that that would be the rule in Illinois. Now, certainly under Buckeye, under the Federal Arbitration Act, I think there's no doubt the U.S. Supreme Court has decided that even in the case of an alleged illegality, the cases under the Federal Arbitration Act are indeed bound to be arbitrated under those circumstances. But there's nothing that compels an Illinois court applying Illinois law to apply that. In fact, I think the Tortiello case does a very good job of explaining why. And I'm quoting here a passage we cite at page seven of our reply brief. Buckeye was interpreting the FAA, which divides the responsibilities between the arbitrator and the trial court differently than does the Arbitration Act, which is the applicable statute here. They go on to say, under the Arbitration Act, the issue of whether the contract arbitrated exists must be determined by the court, not the arbitrator. And then they go on to say that's regardless of whether this goes to the entirety of the contract or just the arbitration clause. So. I follow you, but what about, did the parties really agree to Illinois law or did they just agree to, did they say the rules of the American arbitration, the rules, if I'm at the American Arbitration Association, which are not peculiar to Illinois, right? And they just agreed that their venue, they would sit down and arbitrate it in Chicago. Section 10 of the agreement provided as follows. Governing law, this agreement shall be interpreted under and governed in accordance with the laws of the state of Illinois. So we have, we certainly have the reference in the arbitration clause to the American Arbitration Act, but section 10 of the act, we believe is a clear choice of law provision that would mandate the applicability of Illinois law to the controversy. If we look at- Can I understand or try to understand your position? You're not saying that there was no agreement or contract for arbitration. You're saying we did agree, but it's not enforceable. The entirety of the contract is not enforceable because it's a contract between an unregistered or unlicensed individual and another party. It would be the same as though- But you would agree there was an underlying contract to arbitrate. There was a meeting of the minds. Everybody agreed we'll arbitrate. But your position is it can't be enforced because it's void by virtue of statute. Right, I don't want to mince words on there, but we think there was no contract because of the fact that it's void ab initio because of a lack of capacity to contract. This would be no different than if somebody 10 years of age entered into a contract and said, here's a million dollars, and signed away their inheritance or something. That contract never came into existence in the eyes of the law because of the fact that it's between one party who has no capacity to contract for what they're contracting for. Here, it's an unlicensed individual. I understand that, and that helps me. We've got the Kaplan case, of course, with an architect. We've got the Askey case with somebody who held themselves out as a securities broker, didn't have the proper license. Consistently, the Illinois courts have held that contracts involving people holding themselves out as licensed individuals or registered individuals do not have the right to enforce a contract and do not have the right to enforce the arbitration clause in that contract. It's void ab initio, and here, some statutes that I've seen don't have this expressed provision, but under 10-60 of this act, it takes out the question of whether it's void or not. There's a lot of litigation under some of the different acts as to whether the lack of licensure makes it void, whether you can recover the money because they've actually done the service. Here, 10-60 takes care of both of those otherwise troubling problems. It says it's void, uses that exact word, and then talks about recovery of the all amounts paid in, as Your Honor pointed out, attorneys' fees as well. So the remedy is contained right in there, and we think under section 2A of the act that we did exactly what you're supposed to do in those circumstances. Somebody moves to dismiss and says, we have an arbitration clause under the Illinois act. You've got the right to come in and say, no, we don't think it's valid. We want a summary determination that your contract is void. That's what we did. That's what we saw, and that's what we think the proper resolution is. Again, all Illinois case law on this precise point is in accord with our position. The main argument that the defendants make is we've got the Buckeye case under the Federal Arbitration Act, and it fairly recently set forth a law under the Federal Act that even in cases of illegality are determined in the first instance by the arbitrator. And the distinction we're making here is that may be true under the Federal Act, but we have a choice of law provision saying Illinois law. We have section 2A of the Arbitration Act that allows us to come in and get a summary determination that that contract's void. That's what we sought. That's what I believe we're entitled to, and I think that's the proper result in this case. Counselor, you have two minutes. Thank you. And certainly we understand that this court is not bound by tortory, hello, I keep torturing that case, but it's the only post-Buckeye case to address this issue under Illinois law. And what it says, whether it's victo or not, is that this is still gonna be first determined by the court. And regardless of whether it's to the entire contract, again, that might be dicta, but this court, I think in a well-reasoned opinion, said Buckeye doesn't apply under the Illinois Act, and in Illinois, when you have a situation such as we have here, it's the court that's gonna serve that gatekeeping function. It's gonna protect somebody from unscrupulous people who aren't properly licensed or registered. Well, I mean, the reality, given the, I guess, the definitive of this act, I mean, they sold your business, right? I mean, although they weren't licensed, they weren't registered, but they did hire you to do it. Well, it's beyond the scope of this case to discuss whether or not we think they did a good job, a bad job, or an indifferent job, but what we think- Good, bad, or indifferent. There was a sale closed, and that's when they got the biggest portion, the $1.2 million. Right, but you're on that, where you came to saying, well, the doctor wasn't licensed, but he performed the surgery, or the lawyer wasn't licensed, and he didn't perform the legal services, but he may have botched the trial or the surgery, and that's why our claim is entitled to the protection, we believe, of the registration. But if the doctor wasn't licensed, and he cured the patient of cancer, so what? You know, I mean, I guess, but I agree with you. It's really irrelevant here. When we're talking about unscrupulous, at least where we're at now, it appears the person wasn't registered, but at the same time, they did what they were contained to do, at least at some level. At some level, and certainly there's no record of any criticism we would have as to the performance, but again, we think- Well, you don't have to get to that issue. No, you don't. That's what we're- Right. We believe that's correct. Okay. Thank you. Thank you very much. Mr. Lubin, you may respond. Thank you very much, Judge. May it please the court, counsel. David Lubin, here for the Apo Lee, Wind Lake Capital Advisors. I will also try to be brief. It's not my strong suit, but I'll try in the argument to cover just the main points, and I think many of the issues that I was gonna cover have already been addressed by Mr. Riffle and subject to questioning. I do think this is a relatively straightforward case. I wanna make it clear that we never reached the point of even meeting the pleadings. So the arguments about unlicensed and unscrupulous, the plaintiff would certainly have liked to have engaged in merits-based litigation. We didn't get to that point. I simply wanna note that the record doesn't reflect that my client did anything improper or violated any law. Having said all that, the issue in the case is whether a challenge to an agreement as a whole on the grounds of illegality has to be submitted to an arbitrator or to a circuit court. And it's argued that Judge Vespa reached the only proper conclusion that he could in this case, and that was that when the challenge is to an agreement as a whole and not specifically to an arbitration clause, then it's been clear for decades, and it's certainly clear now under Buckeye check cashing, that that's an issue for the arbitrator. Case goes to the arbitrator. Parties can engage in all of the same litigation that they would otherwise be able to do. The arbitrator simply assumes control of the case. Plaintiff isn't deprived of any remedy. Plaintiff simply has the same remedy, albeit in an alternative forum. It's important to note that this is a case where we don't have a standalone arbitration agreement. The agreement between the parties covered three pages, covered 11 paragraphs. It addressed terms for compensation, scope of services that my client was to provide to L.R. Nelson, indemnification, choice of law, and arbitration clause. Let me ask you, it seems to me the key issue that Mr. Ripple raised was that he says the FAA doesn't apply, the only arbitration act applies. Our response to that is, and I think we've got a concession  That's not really in dispute. The argument is that the choice of law provision mandates the displacement of federal law, the displacement of the Federal Arbitration Act. We disagree with the statement here that if you look at Tortoriello and the other cases, that in fact they just involved a generic choice of law provision. If you read Tortoriello, Tortoriello had an agreement that stated, it contained multiple parts. It was a used car contract. It contained an arbitration clause. Within the arbitration clause itself, it said the arbitrator is required to follow the Illinois Arbitration Act and the proceedings. There was an internal choice of law provision in Tortoriello. I believe that that would be the reason for that decision, that there was there a choice that the arbitration itself would be conducted according to Illinois law. If you look at our contract, it doesn't contain any internal choice of law provision within the arbitration clause. In fact, as Justice Smith, you noted, it says the arbitration will be conducted according to the rules of the American Arbitration Association, a national body. The generic choice of law clause comes well afterwards. It doesn't refer to the arbitration itself. And we cite a couple cases in our brief. Now, albeit they're federal court cases, one does arise under Illinois law. It's from Iowa Precision Press. But there are cases where this exact issue was addressed. And it was an issue of, if you've got a multi-part agreement with a generic choice of law provision and a reference within the arbitration to AAA rules or to the rules of the New York Stock Exchange, then there is no displacement. The district courts in Precision Press and in Decker said, that's not a clear enough intent of the party's intention to not have the Federal Arbitration Act apply at all. So we argue, first we argue, frankly, that the issue was waived. It was never argued before Judge Vespa. It was clear that we were arguing about the Federal Arbitration Act. We didn't get into an argument about the choice of law provision. Secondarily, though, we argue that it doesn't control, it doesn't displace Federal Arbitration Act because of these cases that show there's not a specific intent to displace federal law. There's just a generic choice of law that comes later on. And finally, we'd argue that if there was an Illinois law choice here, and if Illinois law was really construed to require that a challenge to an agreement as a whole be submitted to the court, then there'd be a conflict, be a conflict between state law and federal law. And in that case, we argue that there'd be a preemption. There was just a preemption case recently decided by the Illinois Supreme Court, Carter versus S.S.C. Oden. Different circumstances, but nonetheless, we argue that that clearly shows that there is a preemptive effect. There is a case that is extremely close from the Sixth Circuit Court of Appeals, Faro Corp. We urge you to consider it, and it holds that if Ohio law applies, and if Ohio law would require that a decision be made by the court instead of the arbitrator, then there's a conflict, and under a conflict, federal law is supreme. So our argument is that one way or the other, the Federal Arbitration Act does apply. Our last argument, which you don't have a case of, let's have a circuit here. I mean, we don't have that. I mean, you can go around and talk about, there may be a direction that way, but we don't have anything at this point. My argument is that the case law on which LRN relies is distinguishable, because it doesn't involve a generic choice of law. It involves an embedded arbitration choice of law, which we don't have in our argument, in our contract here. But I concede that the cases that I rely on are not Illinois appellate court, Illinois Supreme Court cases, until you get to preemption. On preemption, the Illinois Supreme Court case of Carter is there, and I believe that it is consistent with federal court. I believe that this court has also had a preemption case under the Federal Arbitration Act, R.A. Weiss. So I would argue that if we get down to that point, and if you really felt that state law was in conflict, there would be a preemptive effect. However, the next argument is that state law should not be interpreted to provide that an attack on an agreement as a whole has to be submitted to an arbitrator. The LRN wants to focus on, well, this is about illegality. It's not about fraudulent inducement. It's different. That's not the difference that we believe is material. The material difference is, is the challenge that the plaintiff is making specifically focused on the arbitration clause. Is the plaintiff arguing, I was fraudulently induced into agreeing to arbitrate. The arbitration clause is illegal because arbitration clauses can't be used in this type of contract. For those focused challenges, Illinois law and federal law has always held, those go to the court. The court decides those preliminarily. If they find that there's an agreement to arbitrate, it goes to arbitration, and then the substituent merits get decided. However, federal law has always held, and at least until one recent decision, Illinois law has always held, that if you've got an argument that an agreement in its entirety is void because it was fraudulently induced or because it was illegal or because one of the parties was a minor, if you have an argument that attacks the entire agreement, then that has to be submitted to the arbitrate. That goes back to Prima Paint, 1967 United States Supreme Court case under the Federal Arbitration Act. It goes back to multiple decisions from the Illinois Appellate Court. This court's decision in 1992 in Nelson versus Roger Lane held specifically if the attack is on the agreement as a whole, it must be arbitrated. It's not an issue for the court. Fourth district's decision in Monaco versus NCR, second district's decisions in J.K. Cement and Canuco, and first district opinion in Bloom versus Lund. There was a consistent body of case law following Prima Paint that said, what matters is whether you're attacking the agreement as a whole. In this case, there's no dispute that LRN is attacking the agreement as a whole. It's not arguing it's illegal to have an arbitration clause in a business broker contract. It's arguing the whole contract is void. So, by the way, ASTI is not inconsistent with my entire argument. ASTI did not involve a challenge to an agreement as a whole. ASTI involved a challenge. In ASTI, the plaintiff was a customer of a brokerage house and she sued alleging breach of fiduciary duty and negligence over losses and securities. The brokerage house came in and said, we have to arbitrate these substantive claims because of this customer profile. The customer profile was a standalone arbitration agreement and ASTI said, well, you are not a licensed seller of securities. You can't have a valid arbitration agreement. It was an attack on a specific arbitration agreement and in ASTI, the second district, whichever district it was, first or second, said we can distinguish the third district case of Nelson versus Roger Lang because it involved a challenge to an agreement as a whole. Our case does not. So, even in ASTI, they said, you know, we recognize that if there was an agreement, if there was an attack on the agreement as a whole, that's an issue for the arbitrator. That's where we're at. That's what this case is about. Now we get to Tortoriello. Tortoriello, unfortunately, muddies the water in our view and it does so really unnecessarily. We do argue that it's dicta. Tortoriello was a customer buying a used car and she wasn't happy about her deal. And in the course of contesting that and asserting her legal rights, the used car dealership raised an arbitration provision. And she said, the argument in Tortoriello was, well, I couldn't read it. Nobody pointed it out to me. It was inconspicuous. And moreover, the arbitration provision said the arbitrator couldn't award punitive damages or consequential damages. That violates consumer fraud. I'd be prejudiced if I was forced into arbitration. That was an attack on the arbitration provision. It wasn't an attack on the agreement as a whole. Under Tortoriello, the court decides a tax specifically focused on arbitration provisions. And the court said so in Tortoriello. It said, Buckeye check cashing talks about sending a tax on the agreement as a whole to the arbitrator. We can distinguish it. Then in two sentences, the court went on to say, and it doesn't matter anyway, because under state law, all challenges go to the court. The arbitrator doesn't. Thank you. The arbitrator doesn't decide any challenges to the enforceability of arbitration provisions. Well, if you take that literally, then without mentioning the cases, the court in Tortoriello purported to disagree with and overrule this court's decision in Nelson versus Roger Lang, several other prior decisions from the Illinois appellate court, as well as the majority rule that the vast number of other states that have uniform arbitration acts provide. Two sentences in Tortoriello, if you decide to follow it, would fundamentally change decades of law, which provide that the distinction is between a tax on the agreement as a whole in its entirety, which must be sent to the arbitrator, or a tax specifically focused on the arbitration provision, which are the only types of tax that get decided by the court. Judge Vespa reached the right decision in this case, in our view. He found that the attack was on the agreement as a whole, and he sent it to the arbitrator. We ask this court to affirm his decision. If there are no questions, then I thank you for your consideration. I don't believe there are. Thank you, Mr. Rubin. Mr. Riffle, you may reply. I'd like to start where counsel left off on the Tortoriello case. I don't think following Tortoriello would change any law at all. In Tortoriello, as Mr. Rubin pointed out, they challenged that, in part, on the illegality of one portion of that, which would waive the ability to obtain punitive damages. The Tortoriello case makes a really good distinction between an illegal and therefore void contract, and one which possibly is voidable on fraudulent inducement grounds. I think that's a very important distinction. All those cases that Mr. Rubin just rattled off, I believe, are fraudulent inducement cases, not illegality cases, not illegality cases involving unlicensed or unregistered professionals. The only cases in Illinois involving unlicensed or unregistered professionals and arbitration agreements hold that the courts, and not the arbitrator, make the determination as to whether those are enforceable. The Asti case, the Kaplan case. Let me, before you go on, Mr. Riffle, let me just ask you, what do you say about Mr. Logan's argument about the waiver that, in the trial court, he didn't argue that the Illinois Arbitration Act applies? We absolutely disagree. We affirmatively said, and just by way of background, they filed a very short motion to dismiss in which they didn't articulate affirmatively that they thought that the Federal Arbitration Act applied. Very short memorandum in which there was never a claim that said Federal Arbitration Act applies. We came back, and what we did was we affirmatively said, under Section 2A of the Illinois Act, we want a determination that there is no valid binding contract. And we cited Asti and Kaplan and Illinois cases. In their reply brief, they spend 90% of that reply brief. That may be an exaggeration, but the vast majority of the reply brief cited Buckeye for the first time in their argument that under the Federal Arbitration Act and Buckeye, we can't proceed in court. So I think we did not waive it. We absolutely affirmatively availed ourselves of the rights under the Illinois Act by citing to Section 2A and not just citing to it, but affirmatively seeking relief under that provision. We wanted a summary determination by the court that there was no binding agreement. I want to address very quickly, I believe counsel was incorrect in terms of the cases on the choice of law. I believe at least Glazer involved choice of law provisions that were not, in counsel's words, embedded in the arbitration clause, but rather were stand-alone provisions in the agreement. And I think that's what Glazer stands for, the proposition that if the court, if there is a... So would it be your position that a choice of law provision in a contract involving commerce would take it out of the Federal Arbitration Act? Would the parties expressly agree to... Yeah, so it's all choice of law things, do they say we agree that this will be done by the laws of Illinois, New Hampshire, pick one, 48 more, and then say that a choice of law provision in a contract would take the case out of the purview of the Federal Arbitration Act? That's exactly right. That's exactly our position, and the Tortorello case, I believe, is the only Illinois case cited by either party that addresses that issue. I believe there is no Seventh Circuit case. The only Illinois case to state that was the Tortorello case, and it said, even if it involves interstate commerce, if the parties have expressly agreed to that choice of law, then the Illinois Act applies, and not the Federal. Didn't almost every contract have a choice of law clause in it? Well, I think, I've seen a number of them that specifically adopt the Federal Arbitration Act within the section on arbitration, and the parties could have definitely said, we're hereby agreeing that we're gonna be governed by the Federal Arbitration Act, but I think Illinois practitioners drafting Illinois contracts are fully allowed to say, we wanna apply Illinois law to all aspects of our dealings here. We don't wanna have to deal with esoteric issues under Federal law, we want to agree. Well, I think they can, but the question is, does, just on its face, does the language in this contract put evidence that clear of an intent that we're gonna arbitrate this under Illinois law, as well as just a boilerplate choice of law provision? And the best answer I can give to that, Your Honor, is the quote that we have from Glazer in page one of our reply brief, where, that's what they say, that there's choice of law provision, that the parties did not, they included a choice of law provision selecting Illinois law as the governing law for both agreements, there's nothing in those contracts to support a conclusion that Illinois law was inapplicable to the arbitration provisions. I think the presumption would be the parties intended by that to do what they said, to govern themselves by Illinois law, certainly understand the point, but I think freedom to contract, and I have indeed seen contracts where parties in large contracts involving parties from multiple states will go so far as to incorporate the Federal Arbitration Act. They could have here, and didn't, so we really do think that the Illinois law should apply and give us that remedy. And I come back, finally, to section 2A of the Illinois Act, which expressly says you can, if you dispute the existence of an arbitration agreement, you can go into court, you can avail yourselves of that remedy, you can seek a summary determination, I think it's supposed to be a very quick and perfunctory process for the court to make that determination as to whether you really have a valid contract. And again, the final comment I'd make is, the Illinois legislature made it very clear in section 10-60 of the Business Broker Act that a contract by somebody who's not licensed to do the services defined in that act is void. I think that distinguishes this case from all the fraudulent inducement cases. I would agree under Illinois case law, if we had a fraudulent inducement case, we would have no big faith argument that that should be outside the purview of the arbitrator in the first instance. But illegality and voidness ad initio, I think sets this case apart, is the narrow exception to the rule that an arbitrator in the first instance determines arbitrability. In this case, the court should serve that gatekeeper function, should determine whether or not there is a licensure problem, thereby a licensure registration problem, thereby making the contract void. Once that determination is made, then the case, indeed, if it was determined that it's valid, could go back to arbitration. But the gatekeeper function, I think, needed. Would you agree that if the Federal Arbitration Act does apply, I'm not asking to agree that it does, but if it does, that changes everything under this Ferrer case, for example, where the guy said, no, my agent was unlicensed, therefore the contract's void, and the Supreme Court says, tell the arbitrator. I would agree. I think under Buckeye in that case, I think that's absolutely right. If the court determines, no, absolutely, the Federal Act has to apply, I think that's true. So it all comes down to, in our view, Illinois law versus the Federal Arbitration Act. The case law, I think, is strongly supportive of our ability to enforce the Illinois Act because of the choice of law provision, and then you couple that with the express statutory provision that voids this contract, and the courts ought to keep that narrow function in those circumstances to protect people. These are statutes designed to protect the public. The court has that ability to protect the public in those narrow circumstances where it's illegality, and particularly in a registration scenario, and we do think the case law, the only available case law that I think is permanent is the Tortorello case that says that there's no preemptions that, even in cases involving interstate commerce, that the Illinois Act can be applied here. For those reasons, we respectfully request that we receive an amendment. Thank you very much. Thank you, counsel, for your arguments in this matter this afternoon. There will be taken under advisement.